STATE of Minnesota, Respondent,

v.

Kurt Dean DOUGHMAN, Appellant.

No. C6-83-1197.

Court of Appeals of Minnesota.

Dec. 7, 1983.

C. Paul Jones, Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., David C. Johnson, Koochiching County Atty., International Falls, for respondent.

Considered by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ. and decided by the court with oral argument waived.

## OPINION

**FOLEY, Judge.**

This is an appeal from a postconviction order of the Ninth Judicial District Court denying appellant's request to vacate his conviction for sale of a controlled substance and to permit him to withdraw his guilty plea. We affirm.

On October 26, 1982, appellant Kurt Doughman pled guilty to a charge of sale of a controlled substance. At the time of his plea appellant was on probation for two prior criminal convictions, felony theft and fleeing a police officer. He had pled guilty to both crimes and had signed a "Petition to Plead Guilty" for both. However, appellant had moved to withdraw his guilty plea before being sentenced on the fleeing charge.

Attorney Charles LeDuc, who had represented appellant on both prior charges, negotiated a plea bargain with the state in the case at bar. The agreement called for appellant to plead guilty to sale of a controlled substance and to withdraw his motion to withdraw his guilty plea to the fleeing charge.

In exchange, the state agreed to dismiss a pending felony and several misdemeanor charges. In addition, the state agreed to recommend concurrent stayed sentences for the felony theft and sale of a controlled substance charges. Appellant's probation was to be conditioned upon his spending the first year of probation at the North East Regional Correctional Center (NERCC).

Before entering his plea appellant discussed his legal rights and potential options with his counsel. The prosecutor spelled out the terms of the plea bargain for the record before appellant entered his plea. And before the court accepted the plea appellant's counsel questioned him on the record to make sure he understood his constitutional rights and the consequences of his guilty plea.

At the end of the plea appellant's counsel moved for immediate sentencing. Appellant waived a sentencing hearing and filing of a "Petition to Plead Guilty" to avoid delay in sentencing.

In accordance with the plea bargain, the court sentenced appellant to concurrent sentences of 14 months for the sale of a controlled substance and a year and one day for the felony theft. Both sentences were stayed for five years. As a condition of probation the court required appellant to spend one year at NERCC.

In January 1983 appellant's probation was revoked for probation violations and he was committed to Stillwater Correctional Facility to serve the concurrent sentences.

Appellant petitioned the district court for postconviction relief on the ground that his guilty plea was not made knowingly, intelligently and voluntarily. He sought to have

his conviction vacated and to be permitted to withdraw his guilty plea. He also sought credit for all time served since his sentencing, including probation time.

The district court found appellant's guilty plea to be knowing, intelligent and voluntary, but granted him credit for probation time following his sentencing.

■ Upon appeal we must evaluate whether there is sufficient evidence to support the postconviction findings of the district court. *Kochevar v. State,* 281 N.W.2d 680 (Minn.1979). We find ample evidence in the record to support the finding that appellant's plea was knowing, intelligent and voluntary.

Appellant bases his petition for postconviction relief on several factors. He contends that his guilty plea was invalid for the following reasons:

1. The trial court judge failed to question him as set forth in Minn.R.Crim.P. 15.01;

2. He failed to sign a "Petition to Plead Guilty" as suggested by the Comments under Minn.R.Crim.P. 15;

3. He did not understand that by pleading guilty he forever waived the right to a jury trial; and

4. The trial judge allegedly informed him that if he went to trial and was found guilty he would be sent to Stillwater.

Appellant's first two contentions clearly do not warrant invalidating his guilty plea. Neither the fact that the trial judge failed to question him as set forth in Minn.R. Crim.P. 15, nor the fact that appellant failed to sign a "Petition to Plead Guilty" is persuasive evidence that appellant's plea was unknowing or unintelligent.

■ Appellant and his counsel waived filing a "Petition to Plead Guilty" to permit immediate sentencing. The trial court accepted the waiver because it had before it two additional criminal files in which the appellant had pled guilty and signed a petition stating that he understood his rights. Furthermore, the Comments to Rule 15 provide that it is desirable, but not mandatory, to submit such a petition when the plea is entered.

■ Likewise, the trial court's failure to follow the suggested questions in Minn.R. Crim.P. 15.01 verbatim is not fatal. The Comments to Minn.R.Crim.P. 15.01, and Minnesota case law establish that failure to interrogate a defendant as set forth in Rule 15.01 or to fully inform him of all constitutional rights does not invalidate a guilty plea. *See Kochevar v. State, supra.* What is important is not the order or the wording of the questions, but whether the record is adequate to establish that the plea was intelligently and voluntarily given.

■ The questioning in this case was substantial, if not precisely that prescribed by Minn.R.Crim.P. 15.01.

Q. Your name is Kurt Dean Doughman?

A. Yes, sir.

    *    *    *    *    *    *

Q. * * * Do you understand the charges against you, which is delivering of a controlled substance, correct?

A. Yes.

Q. You have heard Mr. Johnson's statement of the plea bargain, do you agree with that?

A. Yes

Q. This crime was alleged to have been committed on or about the 16th day of September 1982 in Koochiching County, Minnesota, do you understand that?

A. Yeah

Q. You have been represented by a lawyer from the Shermoen and Shermoen firm and you are satisfied that you have had sufficient time to discuss all of the aspects of this case?

A. Yes

Q. And you understand all of the aspects of the plea bargain that we have gone through?

A. Yes

Q. You feel that Mr. Jaska and myself are fully, both fully, advised as to all of the facts of the case?

A. Yes

Q. You think we have gone through all of the defenses of the case?

A. Yes

Q. You feel satisfied that we have represented your interests as fully as possible in this matter.

A. Yeah

\* \* \* \* \* \*

Q. Do you understand what is going on here today, you are not having any problem understanding the proceedings here, are you?

A. No

Q. Have you been taking any pills or other medicines?

A. No

Q. With regard to the charge, you are not making any claim that you were so drunk or so under the influence of drugs, that you didn't know what you were doing?

A. No

Q. And you are not making any claim that because of the fact that you have been held in jail and couldn't post bail that that is the only reason why you are pleading guilty here today?

A. No

Q. You understand that you have a number of rights as any citizen of the United States does, and one of those rights is the right to challenge generally the legal sufficiency of the complaint, and that is what we call a probable cause hearing and that by pleading guilty, you understand you are waiving that right?

A. Yes

Q. And you challenge the admission of certain items of evidence at a pre-trial hearing as well some of the evidence that would probably be challenged in the matter would be the physical evidence that the State has in their possession, the evidence that they claim to be marijuana, and that by pleading guilty here today, you are giving up that right also, do you understand that?

A. Yes

Q. You understand that you are giving up the entire right to challenge any legal aspect of this before the Court, do you understand that?

A. Yes

Q. Do you also understand that you are entitled to a jury of 12 individuals? You understand that the State bears the burden of proof in your guilt beyond a reasonable doubt to all 12 of those individuals, do you understand that?

A. Yes

Q. And it would be unanimous either for guilty or not guilty, do you understand that?

A. Yes

Q. You understand that you wouldn't have to prove anything at that trial, Kurt, and in fact, you wouldn't have to testify if you didn't want to, do you understand that?

A. Yes

Q. If you didn't testify, do you understand that no one, the judge, Mr. Johnson, Mr. Jaska or myself could comment on the fact that you didn't testify?

A. Yes

Q. You understand that you would have a right to subpoena and call witnesses on your behalf and make them testify for you in open court?

A. Yes

Q. Do you understand that the State would have to call witnesses and make the people that are making claims against you testify in open court, do you understand that?

A. Yes

Q. Do you understand the maximum penalty that the court could impose is five years imprisonment \* \* \*. Or

fifteen thousand dollars, do you understand that?

A. Yes

Such questioning provided an adequate record for evaluating appellant's plea, particularly when supplemented by testimony on appellant's discussions with counsel and by appellant's criminal history.

 Appellant's third claim, that he did not understand that by pleading guilty he was forever waiving his right to proceed to trial, is not supported by the record.

Appellant discussed the case, possible defenses, the plea bargain and other options with his attorney before entering a guilty plea. This alone raises the presumption that he was fully informed of his rights. *State v. Lorentz,* 276 N.W.2d 37 (Minn. 1979).

The record also shows that appellant specifically acknowledged that by pleading guilty he was "giving up the entire right to challenge any legal aspect of [the case] before the court."

 Furthermore, appellant's criminal history makes it unlikely that he was unaware of the consequences of a guilty plea. He had entered guilty pleas and had submitted "Petition[s] to Plead Guilty" in two prior criminal matters. The same attorney represented him on the prior matters and the October 26, 1982 sale of controlled substances charge. Thus, on three occasions appellant had discussed the ramifications of entering a guilty plea with the same legal counsel, and had testified under oath that he understood his rights. A reviewing court may weigh a defendant's experience with the criminal justice system when evaluating whether his plea was knowing and intelligent. *U.S. ex rel. McGrath v. La Vallee,* 348 F.2d 373 (2d Cir.1965).

In light of the questioning and appellant's criminal history, the district court was justified in concluding that appellant was fully aware of his constitutional rights when he entered his guilty plea.

Finally, even if the trial judge told appellant that he would be sent to Stillwater if a jury found him guilty, that would not make appellant's plea involuntary. Incarceration for a year and a day could properly have been imposed under the Minnesota Sentencing Guidelines. The fact that appellant might have received a more severe penalty had he gone to trial instead of accepting the plea bargain does not make his plea involuntary. *Brady v. U.S.,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). As the U.S. Supreme Court held in *Brady,*

> we decline to hold that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged. 397 U.S. at 751, 90 S.Ct. at 1470.

We have examined the other claimed errors raised by the appellant and find them to be without merit.

Affirmed.