*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1530**

Shawn Christopher Brown,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed June 24, 2024
Affirmed
Reyes, Judge**

Stearns County District Court
File No. 73-CR-22-5729

Cathryn Middlebrook, Chief Appellate Public Defender, Rebecca Ireland, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Renee N. Courtney, St. Cloud City Attorney, Kyle E. Day, Assistant City Attorney, St. Cloud, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

In this appeal from an order denying postconviction relief from his conviction of third-degree driving while impaired (DWI), appellant argues that the postconviction court abused its discretion by determining that he entered an intelligent guilty plea. We affirm.

# FACTS

In July 2022, respondent State of Minnesota charged appellant Shawn Christopher Brown with two counts of DWI and one count of driving after cancellation, inimical to public safety. The charges arose after appellant drove himself to the St. Cloud Police Department in January 2022 while he had a canceled driver's license and had both amphetamine and methamphetamine in his system.

In September 2022, appellant pleaded guilty to one count of DWI under Minn. Stat. §§ 169A.20, subd. 1(7) (Supp. 2021), .26, subd. 2 (2020), in exchange for the state dismissing the remaining charges. The district court sentenced appellant to 365 days in jail, with 305 days stayed; ordered him to serve 60 days on work release; and placed him on probation for six years.[1]

In January 2023, appellant's corrections agent filed a probation-violation report alleging, in part, that appellant had been involuntarily discharged from his outpatient-treatment program. At a contested probation-violation hearing, the district court found appellant in violation, imposed an intermediate sanction of 45 days in jail, and reinstated his probation with the additional condition that he attend therapy. In March 2023, appellant's corrections agent filed a second probation-violation report alleging that appellant had failed to: report timely to his probation agent his multiple contacts with law enforcement and his nightly location while he was homeless; abstain from the use of

---

[1] The district court later reduced appellant's sentence to 364 days, which is consistent with Minn. Stat. § 609.0341, subd. 1 (Supp. 2023), and reduced his probation length to four years to comply with Minn. Stat. § 609.135 (2022 & Supp. 2023).

alcohol, marijuana, and methamphetamine; and report for random drug testing on three occasions.

In July 2023, before his second probation-violation hearing, appellant filed a petition for postconviction relief, seeking to withdraw his guilty plea. In his petition, appellant argued that he did not make an intelligent plea "due to the deficient waiver of his trial rights."[2] The postconviction court denied appellant's petition, reasoning that appellant implicitly and validly waived his trial rights and that he had abused the judicial process by intentionally delaying his filing of the petition.

This appeal follows.

## DECISION

Appellant argues that the postconviction court abused its discretion by determining that he entered an intelligent guilty plea because (1) he never expressly or implicitly waived his trial rights; (2) he was never asked whether he understood that he would need to relinquish his trial rights to plead guilty; and (3) no one offered a plea petition in support of his plea. We are not persuaded.

Appellate courts review a postconviction court's determination on a defendant's request to withdraw a guilty plea for an abuse of discretion. *Sanchez v. State*, 890 N.W.2d 716, 719-20 (Minn. 2017). A postconviction court abuses its discretion by making a decision that is "based on an erroneous view of the law" or "against logic and the facts in the record." *Id.* at 720 (quotation omitted). Appellate courts review legal issues de novo

---

[2] Appellant did not request a hearing on the petition.

3

and review factual issues to determine "whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017) (quotation omitted).

Although a "defendant has no absolute right to withdraw a guilty plea," *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010), when "withdrawal is necessary to correct a manifest injustice," a "court must allow a defendant to withdraw a guilty plea upon a timely motion" and satisfactory proof. Minn. R. Crim. P. 15.05, subd. 1. A "manifest injustice" exists when a plea is invalid. *Raleigh*, 778 N.W.2d at 94. "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent," and the burden is on the defendant to show that their plea was invalid. *Id.* The validity of a plea is a question of law that appellate courts review de novo. *Id.*

The purpose of the intelligent-plea requirement is to ensure that a defendant understands the charges, the rights they are waiving by pleading guilty, and the consequences of their plea. *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). "'Consequences' refers to a plea's direct consequences, namely the maximum sentence and fine." *Raleigh*, 778 N.W.2d at 96. A district court need not create a perfect record to establish an intelligent guilty plea. *State v. Lawrence*, 982 N.W.2d 772, 775 (Minn. App. 2022). Instead, "[i]f the record reveals careful interrogation by the [district] court and the defendant had full opportunity to consult with his counsel before entering his plea, the court may safely presume that the defendant was adequately informed of his rights." *Id.* at 776 (quotation omitted).

4

First, the record reflects that the district court and appellant's counsel carefully interrogated appellant regarding the charges and his rights. At his first appearance hearing in July 2022, appellant acknowledged that he understood the nature of the charges in the complaint, and appellant's counsel noted on the record that he had gone over both the complaint and appellant's rights with him. At appellant's plea and sentencing hearing, he responded "yes" to the district court's question of whether he wanted to plead guilty to count II. The district court placed appellant under oath and asked appellant's counsel to walk him through the rule-15 petition questions. *See* Minn. R. Crim. P. 15.02, subd. 1. The following exchange between appellant and his counsel then occurred.

> Q: Mr. Brown, as you sit there is your mind clear as to what's going on?
> A: Yes.
> Q: You've been in treatment for over a month at Oak Ridge, right?
> A: No. I've been at Oak Ridge for a month and then I've been a month at NuWay.
> Q: During that time you've been sober?
> A: Yes.
> Q: Are you under the influence of any mood-altering chemicals?
> A: No.
> Q: You understand that the DWI is a gross misdemeanor which carries with it a maximum sentence of a year in jail?
> A: I do.
> Q: And also that the fine the State is offering now is a cap of $900?
> A: Yes.
> Q: Now, you understand that you have a right to go to a trial before this judge -- or a judge or a jury? With it being a gross misdemeanor you would have the right to have a jury of six members. You understand?
> A: Yes.
> Q: They must return a unanimous verdict after hearing all the evidence.

A: Yes.

Q: You can confront and question the [s]tate's witnesses, you can testify, or if you choose to remain silent, that could not be used against you. Do you understand?

A: Yes.

Q: You also have a right to a contested omnibus hearing if the evidence was obtained in violation of your constitutional rights.

A: Yes.

Q: And, again, you can call witnesses, use the subpoena power of the Court to bring witnesses to testify. You understand all of that?

A: Yes.

Q: At trial you would be presumed innocent and the burden is on the [s]tate to prove the charge beyond a reasonable doubt.

A: Yes.

Q: Knowing all of that, are you prepared to plead guilty here to the charge of gross misdemeanor DWI?

A: Yes.

Appellant also confirmed that no one had coerced him to plead guilty and that he understood that his charge was an enhanceable offense. Following this colloquy, the district court asked appellant if he still wanted to enter a plea of guilty and whether he had enough time to speak with his attorney, to which appellant answered "yes." Appellant also affirmed that he had no questions for his attorney or the district court. After appellant pleaded guilty, the district court noted that "there is a factual basis to support the plea and *[appellant] freely and voluntarily waived [his] trial rights*." (Emphasis added.) The district court gave appellant another chance to speak before imposing sentence. Appellant did not dispute any of these statements.

Although the plea colloquy was imperfect because the district court never explicitly asked if appellant understood that he was waiving his rights by pleading guilty, the record nevertheless demonstrates that appellant understood the charges, the rights he was waiving,

6

and the consequences of the plea. *See Raleigh*, 778 N.W.2d at 96; *see also*, *State v. Blom*, 682 N.W.2d 578, 617 (Minn. 2004) (explaining that validity of waivers, even of constitutional rights, depends "upon the particular facts and circumstances surrounding the case" and may be implied by defendant's conduct) (quotation omitted).

Second, the record supports that appellant "had full opportunity to consult with his counsel." *Lawrence*, 982 N.W.2d at 776 (quotation omitted). At his plea and sentencing hearing, appellant confirmed that he wanted to plead guilty after his counsel advised him of his rights. Appellant's counsel stated the plea agreement's terms on the record and appellant acknowledged that he understood the plea's direct consequences. *See Raleigh*, 778 N.W.2d at 96. Appellant affirmed that he had enough time to speak with his attorney, that he had no further questions for his attorney or the district court, and that he did not have anything else he wanted to ask or say to the district court after entering his plea and before sentencing. Because both elements of *Lawrence* are met here, appellant was adequately informed of his rights. 982 N.W.2d at 776.

Furthermore, "[a] court may weigh a defendant's criminal history in evaluating whether his guilty plea was knowing and intelligent." *State v. Doughman*, 340 N.W.2d 348, 350 (Minn. App. 1983), *rev. denied* (Minn. Mar. 15, 1984). As the postconviction court observed, appellant has an extensive criminal history and has pleaded guilty previously to identical or substantially similar charges. Appellant signed a petition to enter a guilty plea in a felony case as recently as June 2021, and prior to that in October 2019.

We are unpersuaded that appellant did not know that he was waiving his trial rights by entering a guilty plea.[3]

Because the record shows that appellant entered a valid guilty plea, appellant's argument that his plea was invalidated by the lack of a plea petition also fails, as filing a plea petition is an alternative to a defendant personally appearing and pleading guilty before the district court. Minn. R. Crim. P. 15.03, subd. 2; *Lawrence*, 982 N.W.2d at 775. Moreover, we need not consider appellant's final argument that the postconviction court abused its discretion by determining that appellant petitioned for postconviction relief in bad faith.

**Affirmed.**

---

[3] Although appellant also relies on *State v. Bell*, a nonprecedential opinion, to support his argument, that case is not binding on us and is readily distinguishable. No. A21-1643, 2022 WL 4126123 (Minn. App. Sept. 12, 2022). In *Bell*, the district court failed to question the defendant regarding many of the rights outlined under Minn. R. Crim. P. 15.01, subd. 1, and the defendant's attorney never submitted a plea petition. *Id.* at *2-4. This court concluded that the defendant's plea was "clearly deficient" and that his prior criminal history alone was not enough to demonstrate that he had intelligently waived his rights. *Id.* at *3. Here, the district court and appellant's counsel covered, and appellant responded to, most of the questions under Minn. R. Crim. P. 15.02, subd. 1, even if they were not read word-for-word from the rule. Furthermore, the postconviction court relied on more than just appellant's criminal history to determine that he entered an intelligent plea.